UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Alisa Persons,

                Plaintiff,

   vs.

WDIO-TV and Hubbard
Broadcasting,

                Defendants.          Civ. No. 09-2884 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)((B), upon the Motion of the Defendant Hubbard Broadcasting, Inc. ("Hubbard"), to Dismiss, or for Summary Judgment, and upon the Motion of the Defendant WDIO-TV ("WDIO") to Dismiss, or Stay the Litigation and Compel Arbitration. See, <u>Docket Nos. 7 and 14</u>. A Hearing on the Motions was conducted

on April 15, 2010, at which time, the Plaintiff made no appearance, and Hubbard and

WDIO appeared by Joseph J. Roby, Jr., Esq.[1]

For reasons which follow, we recommend that the Defendants' Motions to

Dismiss the Plaintiff's Amended Complaint[2] for insufficiency of service be denied,

that the Defendants' Motions to Dismiss the Plaintiff's claim, which arises under the

Occupational Safety and Health Act, Title 29 U.S.C. §§651 et seq. ("OSHA"), be

---

[1]In an Objection filed on March 26, 2010, see, <u>Objection to Motion to Compel Arbitration and Request for Continuance, Docket No. 27</u>, at pp. 4-5 of 5, the Plaintiff requested a continuance, until June of 2010, due to her parenting responsibilities, and her continuing interest in searching for an attorney to represent her.  By Order dated April 1, 2010, we denied her request for a two (2) month continuance, reasoning that she had had about six (6) months to retain a lawyer and, so as not to disrupt her parenting responsibilities, we allowed the Plaintiff to attend the Hearing by telephone. See, <u>Order of April 1, 2010, Docket No. 34</u>.  Notwithstanding the leave extended, as noted, the Plaintiff made no appearance at the Hearing.

[2]Unless otherwise noted, for the sake of convenience, we refer to the Plaintiff's Amended Complaint as the operative pleading, even though it has not been properly served at this time, as we recommend that the Plaintiff be allowed to serve the Defendants with that Amended Complaint, for reasons we later explain, and for cause as required by Rule 4(m), Federal Rules of Civil Procedure.  Substantively, the Amended Complaint is a verbatim rendition of the Plaintiff's original Complaint except for the final sentence, which reads as follows:  "The original complaint of October 15th, 2009 is hereby amended to include the signature of the petitioner." <u>Amended Complaint, Docket No. 4</u>, at p. 7.  As a result, the reasoning for the Recommendations we make is the same whether directed at the Plaintiff's original Complaint, or her Amended Complaint.

granted, that Hubbard's Motion for Summary Judgment be granted, and that WDIO's

Motion to Stay Litigation, and Compel Arbitration, be granted.

## II. Factual and Procedural History

In this employment discrimination action, the Plaintiff alleges, in both her

Complaint, and her Amended Complaint, claims arising under Title VII of the Civil

Rights Act of 1965, Title 42 U.S.C. §§2000e, et. seq. ("Title VII"); the Age

Discrimination in Employment Act, Title 29 U.S.C. §§621, et seq. ("ADEA"); the

Equal Pay Act, Title 29 U.S.C. §§206(d)("EPA"); and the Occupational Safety and

Health Act of 1970, Title 29 U.S.C. §§651, et seq. ("OSHA"). See, Complaint,

Docket No. 1, at p. 1 of 7; Amended Complaint, Docket No. 4, at p. 1 of 7.[3] In

─────────────────────

[3]In their Memoranda, the Defendants assert that the Complaint, and Amended
Complaint, state claims under the Pregnancy Discrimination Act, Title 42 U.S.C.
§2000e(k) ("PDA"), apparently based upon the Plaintiff's citation to Title VII, and her
inclusion of a parenthetical specific, that her sex discrimination claim related to
"(gender, pregnancy, and sexual harassment)." See, Complaint, Docket No. 1, at p.
1 of 7; Amended Complaint, Docket No. 4, at p. 1 of 7. While, as have the
Defendants, we follow the liberal construction rule, under which "a pro se complaint
must be liberally construed," such that "'pro se litigants are held to a lesser pleading
standard than other parties,'" Whitson v. Stone County Jail, 602 F.3d 920, 922 n. 1 (8th
Cir. 2010), quoting Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008), that
standard does not excuse pro se complaints from "alleg[ing] sufficient facts to support
the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); see also,
Frey v. City of Herculaneum, 44 F.3d 667, 672 (8th Cir. 1995)(holding that pro se
complaint fell "short of meeting even the liberal standard for notice pleading" where
(continued...)

support of those claims, the Plaintiff alleges that she was the victim of sexual

harassment; that she did not receive equal pay for equal work, as performed by male

coworkers; that she was retaliated against for reporting incidents of sexual harassment;

that her weight and age were the subject of hostile comments by coworkers; and that

she was assigned to work on equipment that she regarded as unsafe.[4]

---

[3](...continued)
it was "entirely conclusory" and gave "no idea what acts the individual defendants
were accused of that could result in liability"). Here, even under a most liberal
reading of her pleadings, the Plaintiff does not assert any factual basis for a claim
under the PDA, and therefore, we do not address the PDA further.

[4]The Record reflects that the Plaintiff filed a Charge of Discrimination against
Hubbard with the Equal Employment Opportunity Commission ("EEOC"), in which
she alleged claims of sex, retaliation, and age discrimination, and also asserted a
violation of the EPA, see Declaration of Joseph J. Roby, Jr. ("Roby Decl."), Exhibit
A, Docket No. 32-1, and that, on July 17, 2009, the EEOC issued the following
determination:

>   Based upon its investigation, the EEOC is unable to
>   conclude that the information obtained establishes
>   violations of the statutes. This does not certify that the
>   respondent is in compliance with the statutes. No finding
>   is made as to any other issues that might be construed as
>   having been raised in the charge.

Id., Exhibit B, Docket No. 32-2.

In addition, in her Complaint, and Amended Complaint, the Plaintiff alleges that she
filed a Charge of Discrimination with the Minnesota Department of Human Rights,
see, Complaint, Docket No. 1, at pp. 5-6 of 7; Amended Complaint, Docket No. 4, at
(continued...)

Instead of filing an Answer to her Complaint, and Amended Complaint, Hubbard filed a Motion to Dismiss, or for Summary Judgment, see, <u>Docket No. 7</u>, in which it asserts that the Plaintiff's Amended Complaint has never been served by the United States Marshal's Service, and that the Plaintiff's original Complaint was inoperative, because it was never signed by the Plaintiff, although her Amended Complaint purports, after the fact, to amend her "original complaint * * * to include the signature of the petitioner." <u>Amended Complaint, Docket No. 4</u>, at p. 7 of 7. In addition, Hubbard contends that the substance of the Plaintiff's claims, under Title VII, the ADEA, and the EPA, fail as a matter of law, because Hubbard was not either the actual or imputed employer of the Plaintiff, as required by those Federal statutes. Lastly, Hubbard maintains that the Plaintiff's claim, under OSHA, fails as a matter of law, because OSHA does not permit a private cause of action, and therefore, the Court is without subject matter jurisdiction to grant relief under OSHA. The Plaintiff filed no response to Hubbard's Motion to Dismiss, or for Summary Judgment.

---

[4](...continued)
pp. 5-6 of 7, but she has failed to allege how that Charge was resolved, and the Record is silent on that matter. Although the Plaintiff alleges no cause of action under the Minnesota Human Rights Act, in its Memorandum, Hubbard assumes, without admitting, that the Plaintiff properly exhausted her administrative remedies. See, <u>Hubbard's Memorandum of Law in Support of Motions for Dismissal or Summary Judgment, Docket No. 9</u>, at p. 9 n. 2.

As for WDIO, it responded to the Plaintiff's Complaint, and Amended Complaint, by filing a Motion to Dismiss, or to Stay Litigation, and Compel Arbitration. See, Docket No. 14. In that Motion, WDIO joins Hubbard in urging that the Plaintiff's Complaint be dismissed for insufficiency of service of process, and that her OSHA claim be dismissed for want of subject matter jurisdiction. In addition, WDIO asks the Court to Stay this litigation in order that the Plaintiff and WDIO can submit their dispute to arbitration, as required by the most recent contract for employment between those two (2) parties. See, Declaration of James A. Barnum ("Barnum Decl."), Docket No. 10, at p. 3 of 3. The Plaintiff did file a response to WDIO's Motion, in which she solely argues that the Court should not enforce the arbitration clause, because she is attempting to exercise remedies that are available to her under Federal statutes, which are "non-waivable," see, Plaintiff's Objection to Motion, Docket No. 27, at p. 1 of 5, because she is fearful that any arbitrator will be biased against her, and because, when she signed her most recent employment contract, which contained the arbitration clause, she "did not believe that [she] might someday have reason to make a future claim." Id. at p. 3 of 5.

## III.  Discussion

A.     Standard of Review.  The Defendants' Motions implicate Rules 12(b)(1), 12(b)(6), and 56, Federal Rules of Civil Procedure, so we address the Standard of Review applicable to each of those Rules.

1.     Rule 12(b)(1).  As a Federal Court, we have limited jurisdiction and may only hear matters which fall within our jurisdictional domain.  See, Clark v. Baka, 593 F.3d 712, 714 (8th Cir. 2010)("Federal courts are courts of limited * * * jurisdiction," and "[t]hus, every federal [] court has a special obligation to consider its own jurisdiction * * * to entertain a case where, as here, we believe that jurisdiction may be lacking."), quoting McAdams v. McCord, 533 F.3d 924, 927 (8th Cir. 2008), and Huggins v. FedEx Ground Package System, Inc., 566 F.3d 771, 773 (8th Cir. 2009); Zanders v. Swanson, 573 F.3d 591, 593 (8th Cir. 2009)("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."), quoting Gray v. City of Valley Park, 567 F.3d 976, 982-83 (8th Cir. 2009), quoting, in turn, Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).  As a consequence, we have a primordial duty, in every case before us, to inquire whether the vital prerequisite of subject matter jurisdiction has been satisfied.  See, Bradley v.

American Postal Workers Union, AFL-CIO, 962 F.2d 800, 802 n. 3 (8th Cir. 1992); Thomas v. Basham, 931 F.2d 521, 523 (8th Cir. 1991); Hoeffner v. University of Minnesota, 948 F. Supp. 1380, 1383 (D. Minn. 1996).

Since subject matter jurisdiction is a threshold consideration, the Court has "broader power to decide its own right to hear the case than it has when the merits of the case are reached." Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994), quoting Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990); see also, Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers and Trainmen General Committee of Adjustment, --- U.S. ---, 130 S.Ct. 584, 596 (2009)("Subject-matter jurisdiction properly comprehended, we emphasized, refers to a tribunal's 'power to hear a case,' a matter that 'can never be forfeited or waived.'"), quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[;][it] may be raised at any time by a party to an action, or by the court sua sponte."); Redman v. F.A.A., 759 F. Supp. 1384, 1387 (D. Minn. 1991); Rule 12(h)(3), Federal Rules of Civil Procedure.

Moreover, "[i]t is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction." Ferguson v. SMSC Gaming Enterprise, 475 F. Supp.2d

929, 930 (D. Minn. 2007), quoting <u>Nucor Corp. v. Nebraska Public Power Dist.</u>, 891 F.2d 1343, 1346 (8th Cir. 1989), cert. denied, 498 U.S. 813 (1990). A party may challenge, at any time, a Court's jurisdiction over the subject matter of a controversy, under Rule 12(b)(1), Federal Rules of Civil Procedure, since a defense, on subject matter jurisdiction grounds, cannot be waived. See, <u>Moubry v. Independent School District No. 696 (Ely)</u>, 951 F. Supp. 867, 882 (D. Minn. 1996), citing <u>Northwest Airlines, Inc. v. Transport Workers</u>, 451 U.S. 77, 95 (1981).

"In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments." <u>Moubry v. Independent School Dist. No. 696</u>, supra at 883, citing <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993); <u>Osborn v. United States</u>, supra at 729 n. 6. If the defendant brings a facial challenge, as the Defendants do here with respect to the Plaintiff's OSHA claim -- that is, a challenge that, even if truthful, the facts alleged in a Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss." <u>Carlson Holdings, Inc. v. NAFCO Ins. Co.</u>, 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing <u>Titus v. Sullivan</u>, supra at 593; <u>Osborn v. United States</u>, supra at 729 n. 6.

Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Id.

      2.    Rule 12(b)(6).  When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, as we must with respect to Hubbard's assertion, that it was not the Plaintiff's employer, we look only to the facts alleged in the Complaint and "construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  All reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party.  See, Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[5] Young v. City of St. Charles, 244 F.3d

---

[5]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007)(the standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement."); see also, Ashcroft v. Iqbal, --- U.S. ---, 129 (continued...)

623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998), cert denied, 525 U.S. 921 (1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998); see also, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

---

[5](...continued)
S.Ct. 1937, 1949 (2009). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Id.</u> Here, we apply the Supreme Court's "accepted pleading standard."

conclusions, and a formulaic recitation of the elements of a cause of action will not do."); <u>Ashcroft v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).

Here, Hubbard makes a facial challenge to the Plaintiffs' Complaint, thereby taking the facts alleged as true. See, <u>Hubbard's Memorandum in Support of Motion</u>, <u>Docket No. 9</u>, at p. 8 of 15. As a consequence, we examine only the Complaint, when analyzing Hubbard's Motion to Dismiss the Plaintiff's causes of action under Title VII, the ADEA, and the EPA.

3. <u>Rule 56</u>. As to the Plaintiff's claims under Title VII, the ADEA, and the EPA, Hubbard argues that, if it is not entitled to a dismissal of those claims, then it is entitled to Summary Judgment because, it urges, the Declarations it has submitted for the Court's review, leave no genuine issue of material fact for a Jury's resolution. Notably, Hubbard's Declarations have not been substantively contested by any sworn attestations by, or on behalf of, the Plaintiff.

Under Rule 56, Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir.

2004), cert. denied, 544 U.S. 977 (2005).  Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Ins. Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned Parenthood of Minnesota/ South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 2004); <u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e)(2) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial."  <u>Rule 56(e)(2), Federal Rules of Civil Procedure</u>; see also, <u>Anderson v.</u>

Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

B.    Legal Analysis.    Since they involve different considerations, we separately address the discrete bases for the Defendants' Motion to Dismiss, for Hubbard's Motion for Summary Judgment, and for WDIO's Motion to Stay, and Compel Arbitration.

1.     <u>Insufficiency of Service of Process</u>.  There is no dispute, on the Record before us, that the Defendants were not served with a copy of the Plaintiff's Amended Complaint.  Each of the Defendants has submitted a Declaration that the U.S. Marshal's office served one (1) copy of the Summons, the unsigned Complaint, and an Order granting the Plaintiff's <u>in forma pauperis</u> application, upon each of the Defendants.  See, <u>Barnum Decl., Docket No. 10</u>, at p. 1 ¶2 (who accepted service of process from the U.S. Marshal on behalf of Hubbard, and who attests that he "was served with one copy of the summons, the unsigned complaint, and the in forma pauperis order," and further attesting that Hubbard "has not been served with a copy of the signed amended complaint."); <u>Declaration of George Couture, Docket No. 17</u>, at p. 1 ¶¶2 and 3 (who accepted service of process from the U.S. Marshal on behalf of WDIO-TV, and who attests that he was hand delivered "one set of papers, consisting of one copy of the summons, one copy of the unsigned complaint, and one copy of the in forma pauperis order," and who further attests that, "[n]either at that time, nor subsequently, has WDIO-TV, LLC been served with a copy of the signed amended complaint.").  The Plaintiff has not offered any response that rebuts, or even tends to rebut, those sworn averments.

Under the circumstances presented here, we conclude that a dismissal of the Plaintiff's action for insufficient service of process would be an injustice. While it is plain that the operative Amended Complaint was never served upon the Defendants, the fault in that respect may not rest with the Plaintiff. In an Order dated October 21, 2009, we denied the Plaintiff's application to proceed in forma pauperis ("IFP"), "because the Plaintiff has not signed the Complaint that she submitted with her IFP application." Docket No. 3, at p. 1 of 1, citing Rule 11(a), Federal Rules of Civil Procedure ("Every pleading * * * must be signed * * * by a party personally if the party is unrepresented," and "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the * * * party's attention."). In that same Order, we afforded the Plaintiff the opportunity either to make arrangements with the Clerk of Court to sign her original Complaint, or to file an Amended Complaint that would bear her original signature. Id. at p. 1-2 of 2. The Plaintiff adopted the latter approach, and filed a signed, Amended Complaint, that differed from her original Complaint by its caption as an Amended Complaint, by the addition of a date and a signature, and a last sentence which reads: "The original complaint of October 15th, 2009 is hereby amended to include the signature of the petitioner." Docket No. 4, at p. 7 of 7.

Subsequently, having found the error in her original Complaint to have been cured, we granted the Plaintiff's IFP application by Order dated November 9, 2009, with the following directions:

> The clerk is directed to file the complaint.
>
> IT IS FURTHER ORDERED that the clerk issue summons and the United States marshal serve **a copy of the complaint**, summons and this order upon the defendant(s) as directed by the plaintiff. All costs of service shall be advanced by the United States.

Docket No. 5, at p. 1 of 1 [emphasis added].

Apparently, either the Clerk of Court, the Plaintiff, or both, took our directive literally such that the pleading that was served upon the Defendants was the unsigned original Complaint, and not the recently filed, and signed, Amended Complaint. See, Returns, Docket Nos. 20 and 21 (showing that the "Complaint" was served by the Marshal upon each of the Defendants).

As the Defendants recognize, under such circumstances, the Court has discretion to quash the service of process, but retain the case in order to allow the Plaintiff to serve her Amended Complaint upon the Defendants. See, Hubbard's Memorandum of Law, Docket No. 9, at p. 8 of 15 ("Given that the process served on Hubbard was insufficient, the Court has a choice of two remedies," as "Fed. R. Civ.

P. 12(b)4) authorizes the Court to dismiss the case for 'insufficient process,'" "[o]r the Court has discretion to quash service and retain the action."), citing <u>Froland v. Yamaha Motor Co., Ltd.</u>, 296 F. Supp.2d 1004, 1006-07 (D. Minn. 2003); <u>WDIO's Memorandum of Law, Docket No. 16</u>, at p. 8 of 16 (same); see also, <u>Marshall v. Warwick</u>, 155 F.3d 1027, 1032 (8th Cir. 1998)("[D]ismissal [is not] invariably required where service is ineffective: under such circumstances, the [district] court has discretion to either dismiss the action, or quash service but retain the case."), quoting <u>Haley v. Simmons</u>, 529 F.2d 78, 79 (8th Cir. 1976); <u>3M Company v. Darlet-Marchante-Technologie SA</u>, 2009 WL 1228245 at *6 (D. Minn., May 5, 2009).

Such an approach seems particularly appropriate when it is recognized that the U.S. Marshal effected service of process in this instance, as the Plaintiff appears IFP. As the Court explained, in <u>Moore v. Jackson</u>, 123 F.3d 1082, 1085-86 (8th Cir. 1997), where the plaintiff appeared IFP, and the U.S. Marshal erred in employing a Waiver of Service, and by not effecting personal service:

> 28 U.S.C. §1915(d) states that, for purposes of proceeding in forma pauperis, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." This language is compulsory. Mallard v. United States Dist. Court for Southern Dist. of Iowa, 490 U.S. 296, 302, 109 S.Ct. 1814, 1818, 104 L.Ed.2d 318 (1989)("Congress * * * knew how to require service when it deemed compul-

sory service appropriate."). Submitting a waiver of service is a component of "all process" and §1915(d) compels the officers of the court to perform "all duties" associated with such process. "So long as the prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service 'is automatically good cause with[in] the meaning of [Fed.R.Civ.P. 4(m)].'" Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994)(internal citation omitted).

The Court's automatic finding of good cause within the meaning of Rule 4(m), satisfies us that, as a litigant with IFP standing, the failure of the Marshal to properly serve process upon the Defendants should not result in the dismissal of the Amended Complaint, but requires the Court to "extend the time for service for an appropriate period." See, Rule 4(m), Federal Rules of Civil Procedure ("But if the plaintiff shows good cause for the failure [to effect service within 120 days after her complaint is filed], the court **must** extend the time for service for an appropriate period.")[emphasis added]. The automatic showing of good cause, which is operative in this Circuit, appears to be the majority rule. See, e.g., Rance v. Rocksolid Granit USA, Inc., 583 F.3d 1284, 1286-88 (11th Cir. 2009)[citing cases]; Olsen v. Mapes, 333 F.3d 1199, 1204 (10th Cir. 2003)[citing cases].

Accordingly, we recommend that the Defendants' Motions to Dismiss, which are based upon an insufficiency of service of process, be denied, and that the Plaintiff

be granted until thirty (30) days after a final resolution of this Report and Recommendation, by which to forward two (2) copies of her Amended Complaint for service upon the Defendants by the U.S. Marshal.[6]

2.    The Plaintiff's Right to Sue Hubbard as Her Imputed Employer.

Hubbard argues that as the parent company of WDIO, it was not the Plaintiff's employer, and so, it cannot be held responsible under the claims alleged in her Amended Complaint, which are based upon causes of action against employers only. See, Hubbard's Memorandum in Support, supra at p. 5. In the alternative, Hubbard moves for Summary Judgment, arguing that there is no genuine issue of material fact as to whether Hubbard was the Plaintiff's employer, and it has submitted the Declaration of David A. Jones ("Jones"), who is the Vice President and General Counsel of Hubbard, in support of that Motion. See, Declaration of David A. Jones ("Jones Decl."), Docket No. 11.

Hubbard is correct that the Plaintiff's Amended Complaint does not allege that she was directly employed by Hubbard. Rather, the Plaintiff alleges that she was

_____

[6]Moreover, we find no prejudice to the Defendants in allowing the belated service of process, as the Amended Complaint contains the same substantive allegations as were contained in the Plaintiff's original Complaint, and the Defendants were fully aware of her claims, such that they have directed Dispositive Motions as to their merits. Indeed, the Defendants do not argue any prejudice, and we find none.

employed by WDIO, of which Hubbard is the parent company. Hubbard does not dispute that it is the parent company of WDIO, and therefore, the issue presented is whether, as the parent company of WDIO, Hubbard was so intertwined in WDIO's operations, and in particular, in the decision to terminate the Plaintiff's employment at WDIO, to be held responsible as the imputed employer of the Plaintiff.

      a.    <u>Standard of Review</u>. A parent company normally is not considered an employer of its subsidiary's employees for purposes of Title VII. See, <u>Sandoval v. American Bldg. Maintenance Industries, Inc.</u>, 578 F.3d 787 (8th Cir. 2009). However, a parent company can be found to be an employer of a subsidiary's employees "if (a) the parent company so dominates the subsidiary's operations that the two are one entity and therefore one employer * * * or (b) the parent company is linked to the alleged discriminatory action because it controls individual employment decisions." <u>Brown v. Fred's Inc.</u>, 494 F.3d 736, 739 (8th Cir. 2007)[internal quotations omitted]; see also, <u>Sandoval v. American Bldg. Maintenance Industries, Inc.</u>, supra at 796 (reconciling <u>Brown</u> and <u>Baker v. Stuart Broad. Co.</u>, 560 F.2d 389 (8th Cir. 1977)).

      When determining whether a parent company "so dominates" a subsidiary, our Court of Appeals applies the four-part test set forth in <u>Baker v. Stuart Broad. Co.</u>,

supra at 392.  See, <u>Sandoval v. American Bldg. Maintenance Industries, Inc.</u>, supra at 795-96.  Those factors include: "1) interrelation of operations, 2) common management, 3) centralized control of labor relations, and 4) common ownership or financial control."  <u>Id.</u> at 793.[7]  While the Eighth Circuit held, in <u>Brown v. Fred's Inc.</u>, supra at 739, quoting <u>Frank v. U.S. West, Inc.</u>, 3 F.3d 1357, 1362 (10th Cir. 1993), and citing <u>Johnson v. Flowers Industries, Inc.</u>, 814 F.2d 978, 981 (4th Cir. 1987), that "[t]here is a 'strong presumption that a parent company is not the employer of a subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances,'" a majority of the panel, which decided <u>Sandoval</u>, concluded that the "strong presumption" can be overcome by evidence satisfying the four (4) factor test set forth in <u>Baker</u>.  See, <u>Sandoval v. American Bldg. Maintenance Industries, Inc.</u>, supra at 796 ("[A]ssuming the presumption articulated in <u>Brown</u> informs the analysis set forth in Baker, it is overcome in this case by evidence that ABMI's and ABMK's

_____

[7]Hubbard's Memorandum makes short shrift of the Court's reconciliation of <u>Baker</u> and <u>Brown</u> in the <u>Sandoval</u> decision.  Hubbard cites <u>Sandoval</u> for the two-part <u>Brown</u> test ("so dominates" or "directly involved" in the employment decision), but makes no mention of the four-part <u>Baker</u> test, which the <u>Sandoval</u> Court explicitly held applied to the "so dominated" consideration.  As a result, Hubbard fails to discuss any of the four <u>Baker</u> factors in its brief, instead stating only that, "[a]pplying the <u>Sandoval</u> test, the complaint does not allege that Hubbard dominated WDIO-TV's operations (e.g., common control)."  <u>Hubbard's Memorandum in Support</u>, supra at p. 11.

1) interrelation of operations, 2) common management, 3) centralized control of labor relations, and 4) common ownership or financial control.").

        b.    <u>Legal Analysis</u>. As the cases analyzing the potential liability of a parent company, for the employment actions of a subsidiary, have made clear, the analysis is fact-intensive. As a consequence, the fact that the Plaintiff failed to file any written response to Hubbard's Motion, and Declarations, makes our task all the more difficult. Similarly, the fact that Hubbard has emphasized the distinctions in the corporate structures, and tax responsibilities of Hubbard, and WDIO, but has not offered any evidence that Hubbard was not involved in the employment decisions of WDIO, makes our task doubly difficult. Nevertheless, we are obligated to take the Record as it has been submitted and, notwithstanding the Plaintiff's opportunity to rebut Hubbard's factual submissions, and legal arguments, both in writing and at the time of the Hearing, she elected not to do so.

        Looking first to the allegations contained in the Plaintiff's Amended Complaint, the Plaintiff only refers to WDIO as her employer. See, <u>Amended Complaint, Docket No. 4</u>, at p. 2 of 7 ("I was an over-40 female photographer/editor **at the start of my employment on January of 2005 with WDIO-TV**.")[emphasis added]; <u>Id.</u> ("In my tenure there [i.e., in context, at WDIO] of 3 ½ years, women were always very much

in the minority and were never hired for full-time photography positions directly.");
Id. ("Although there were written guidelines about pay raises and they indicated that
the first raise should occur after 90 days employment at WDIO * * *."); Id. at p. 4
("On May 28th I received my second and final performance review in 3½ years at
WDIO," and "Ms. Massee [WDIO's Assistant News Director], Mr. Goodspeed
[WDIO's News Director,] and Mr. Whaley [the Plaintiff's supervisor at WDIO]
conducted it.").[8] Further, the offensive conduct, of which she complains, all occurred
at WDIO's facility in Duluth.  Moreover, the Record corroborates the Plaintiff's
identification of WDIO as her actual employer.  See, Barnum Decl., Plaintiff's
Employment Agreement with WDIO, Docket No. 10, at p. 3 of 3.

Nowhere in the Plaintiff's Amended Complaint does she directly allege that
WDIO was dominated by Hubbard, nor does she allege that the decision to terminate
her employment was made by Hubbard, in whole or in part.  The Plaintiff does allege
that, "[o]n June 6th, 2008, I was called into a meeting in the conference room with Ms.
Massee and Mr. Whaley," and "[h]e said the terms were pay as if I worked until the
18th, regular medical coverage until the end of June and COBRA after that."

---

[8]The Plaintiff identifies "Ms. Massee, Mr. Goodspeed and Mr. Whaley" on page
3 of her Amended Complaint.  See, Amended Complaint, Docket No. 4, at p. 3 of 7.

Amended Complaint, Docket No. 4, at p. 6 of 7.  In addition, the Plaintiff alleges some involvement in her employment by employees of Hubbard.  For example, the Plaintiff affirmatively alleges that WDIO's corporate parent was Hubbard.  Id. at p. 3 of 7.  She also alleges that, after one incident of alleged sexual harassment, she found "the written corporate guidelines on reporting sexual harassment (there was no employee manual) according to corporate parent Hubbard Broadcasting and reported the incident on the morning of May 9th, 2008 to Hubbard human resources' Vice President Sue Cook (via email), and via letters left at their desks to [her] supervisor, John Whaley, the news director, Steve Goodspeed, the local human resource contact, Peggy Scandin at WDIO."  Id.

　　　As alleged by the Plaintiff, on May 12, 2008, she met with Whaley, and Massee, at WDIO, about that incident, and later that same day she communicated with human resources' Vice President Sue Cook (via email), and via letters left at their desks to my supervisor, John Whaley, the news director, Steve Goodspeed, the local human resource contact, Peggy Scandin at WDIO."  Id.  Then, "[o]n May 14th, 2008, [she] did as local HR contact Peggy Scandin suggested and discussed the situation with WDIO's (former WDIO photographer and now general manager) George Couture."  Id.  The Plaintiff maintains that she was not satisfied with Couture's

handling of her complaint, as she wanted the alleged perpetrator to be written up and, "[w]hen [she] later requested my employee file from Hubbard HR it did not include any written information about [the incident] and [she] was told that it would not be there." Id. at p. 4.

According to the Plaintiff, "[o]n May 28th [she] received [her] second and final performance review in 3-1/2 years at WDIO," and "Ms. Massee, Mr. Goodspeed and Mr. Whaley conducted it." Id. The Plaintiff did not regard that performance review as favorable, she was not given the salary increase to which she felt entitled and, "[a]lthough they did not say the word 'fire' explicitly during [that] meeting, in effect, [she] was being retaliated against by all of my supervisors and forced out in favor of a male employee whom [she] was senior to at WDIO." Id. at p. 5. As a result, the Plaintiff believed that she was being "constructively discharged." Id. The Plaintiff alleges that, "[o]n June 5th, [she] spoke with Ms. Cook of Hubbard HR (whom [she] had] been in contact with over the past month)." Id. As related by the Plaintiff, Cook "did not offer any information about her investigation nor ask [the Plaintiff] to stay until she had finished her investigation," as "[s]he simply said that [the Plaintiff] sounded 'miserable' and she offered [the Plaintiff] paid time off until the 18th after which [the Plaintiff] would be no longer employed from WDIO." Id. The Plaintiff

informed Cook that she would be filing a complaint with the Minnesota Human Rights Department, which she had already done on the advice of her "local attorney," in May of 2008.  Id.

According to the Plaintiff, "[o]n June 6th, 2008 [she] was called into a meeting in the conference room with Ms. Massee and Mr. Whaley," and Whaley advised her that "the terms were pay as if [she] worked until the 18th, regular medical coverage until the end of June and COBRA after that."  Id. at p. 6.  The Plaintiff "then applied for and was, subsequently, denied unemployment."  Id.  "In written form and in a conference call in September of 2008 with members of the station (including Ms. Massee, Mr. Whaley, Mr. Goodspeed and Ms. Cook)," the Plaintiff "believe[d] that they made statements that were contrary to the truth that affected the outcome of the initial decision on [her] eligibility to receive unemployment."  Id.  The Plaintiff then goes on to allege as follows:

> In a form from the Minnesota unemployment department which was completed by Hubbard HR on July 1st, 2008, and submitted to the unemployment department, Ms. Cook denied ever being informed about the specific incident that precipitated my leaving even though I did inform her along with my supervisor, the local HR and Mr. Goodspeed on May 9th, 2008.  I communicated with her about this on more than one occasion.

Id.

Apart from the foregoing allegations, the Plaintiff has offered nothing to demonstrate that Hubbard domineered the operations of WDIO, or was responsible for the termination in the Plaintiff's employment.

In turn, Hubbard has provided the Declaration of David A. Jones, who attests that WDIO is a Delaware limited liability company, that is qualified to do business in Minnesota, and is in good standing in Minnesota, whose sole member is Hubbard. See, Jones Decl., Docket No. 11, at p. 1. As pertinent to the issue before us, Jones goes on to attest as follows:

> WDIO-TV, LLC is a separate legal entity and operates as a separate business. WDIO-TV enters into its own contracts and agreements such as its network affiliate agreement with ABC. WDIO-TV holds FCC licenses in its own name which authorize WDIO-TV and WIRT-TV to broad-cast their television signals. While it pays a relatively small administrative fee to Hubbard Broadcasting, Inc. for some support services, such as legal and human resources, WDIO-TV is solely responsible for hiring, firing and disciplining its employees, and for local programming, newsgathering, and ad placement. For example, WDIO-TV is solely responsible for remitting all payroll taxes and has a separate tax identification number. Its unemployment insurance payments are based upon its rating as a separate company and not based upon Hubbard Broadcasting Inc.'s experience rating.

Id. at pp. 1-2.

Lastly, Hubbard has presented evidence, through the Declaration of Joseph J. Roby, Jr. ("Roby Decl."), that, on or about March 23, 2009, the Plaintiff filed a "Charge of Discrimination" with both the MDHR, and the EEOC, against Hubbard, and that, on July 17, 2009, the EEOC issued a determination that it "was unable to conclude that the information obtained establishe[d] violations of the statutes." Roby Decl., Exhibits A and B, Docket Nos. 32-1, and 32-2.

Given this Record, we conclude that the Plaintiff has evaded a dismissal of her claims, under Rule 12(b)(6), Federal Rules of Civil Procedure, but conclude, as well, that she has failed to raise a genuine issue of material fact as to the identity of her employer, which is solely WDIO, and therefore, Hubbard is entitled to Summary Judgment as to the Plaintiff's claims under Title VII, the EPA, and the ADEA. As to the Hubbard's Motion to Dismiss, we are obligated to assume that the facts, which are alleged in the Plaintiff's Amended Complaint, as true, as well as any reasonable inferences that can be drawn from those facts. See, Plouffe v. Ligon, 606 F.3d 890, 893 (8th Cir. 2010)("We generally view the grant of a motion to dismiss de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the non-moving party."), citing Norwoood v. Dickey, 409 F.3d 901, 903 (8th Cir. 2005); Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913,

915 n. 2 (8th Cir. 2008)("Because this matter was decided on a motion to dismiss, the facts are presented in the light most favorable to the plaintiff."), citing Davenport v. Farmers Ins. Group, 378 F.3d 839, 841 (8th Cir. 2004). Under that standard, we can not grant Hubbard's Motion to Dismiss, as reasonable inferences from the facts allege show some interrelationship between Hubbard and WDIO.

With respect to Hubbard's Motion for Summary Judgment, our first obligation is to assess the parties' allegations, or evidentiary showings, under the proper standard of review. As we have detailed, in our "Standard of Review" section, we confront two (2) lines of authority as to the factors to be considered in assessing the showings as to a parent company's domination of a wholly-owned subsidiary, so as to render the parent company the employer of the subsidiary's employees. As we have noted, in Brown v. Fred's, Inc., supra at 739, citing Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1268 (8th Cir. 1987), cert. denied, 484 U.S. 855 (1987), the Court looked to whether "(a) the parent company so dominates the subsidiary's operations, that the two are one entity and therefore one employer," or "(b) the parent company is linked to the alleged discriminatory action because it controls 'individual employment decisions.'" Subsequently, the Court, in Sandoval v. American Building Maintenance Industries, Inc., supra at 793, rejected the two (2) factor test applied in Brown, in

preference to the four (4) factor test that was first enunciated in <u>Baker v. Stuart</u>, supra at 392, including: "1) interrelation of operations, 2) common management, 3) centralized control of labor relations, and 4) common ownership or financial control."

Faced with these conflicting lines of authority, we do not have the option, which extends to panels of the Court of Appeals for the Eighth Circuit, of selecting between conflicting lines of authority for a rule that we would choose to apply.[9]

---

[9]In <u>Williams v. National Football League</u>, 598 F.3d 932, 934 (8th Cir. 2009)(in dissent), pet. for cert. filed, 78 <u>U.S.L.W.</u> 3289 (U.S., May 13, 2010), the dissent addressed the Eighth Circuit's approach to resolving conflicts in prior panel decisions, as follows:

> This circuit has a peculiar approach to conflicting prior panel opinions. The prior panel rule emphatically holds that "[o]ne panel of this Court is not at liberty to disregard a precedent handed down by another panel," Drake v. Scott, 812 F.3d 395, 400 (8th Cir. 1987), but if a second panel violates this rule and deviates from circuit precedent, then subsequent panels are free to follow suit, and to disregard the original circuit precedent in favor of the second decision. See Williams [v. National Football League], 582 F.3d [863,] 879 n. 13 [(8th Cir. 2009)]. This notion is often attributed to a decision in which the panel actually recognized that the first decision properly controls, as it should have controlled the second and subsequent panels. Kostelec v. State Farm Fire and Cas. Co., 64 F.3d 1220, 1228 n. 8 (8th Cir. 1995); see also, T.L. ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006)("When we are confronted with conflicting circuit precedents, the better

(continued...)

Rather, our obligation is to harmonize the apparently conflicting rulings, and that is our first task here. We agree with the Court, in <u>Sandoval</u>, that the two (2) factors expressed in <u>Brown</u> are simply a synopsis of the four (4) factors adopted in <u>Baker</u> and <u>Sandoval</u>. As reasoned by the Court in <u>Sandoval</u>:

> We conclude, however, Brown should not be read as establishing a new integrated enterprise test in our circuit. Rather, it may be harmonized with Baker by noting the traditional four-factor standard is the means by which plaintiffs demonstrate corporate dominance over a subsidiary's operations and establish affiliate liability. In other

---

[9](...continued)

> practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict.")(citing Kostelic, 64 F.3d at 1228 n. 8). Later decisions, however, have simply asserted authority to choose either precedent without regard to sequence, e.g., Graham v. Contract Transp., Inc., 220 F.3d 910, 914 (8th Cir. 2000)(citing Kostelec, 64 F.3d at 1228 n. 8, thus making this court an outlier among the circuits. See McMellon v. United States, 387 F.3d 329, 333 (4th Cir. 2004)(holding that "as to conflicts between panel opinions, application of the basic rule that one panel cannot overrule another requires a panel to follow the earlier of the conflicting opinions," and collecting authority to demonstrate that "[m]ost of the other circuits agree."

See also, <u>United States v. Robertson</u>, 606 F.3d 943, 949 (8th Cir. 2010)("When we are confronted with conflicting circuit precedent, the better practice normally is to follow the earliest opinion, as it should have controlled the subsequent panels that created the conflict."), citing <u>T.L. ex rel. Ingram v. United States</u>, 443 F.3d 956, 960 (8th Cir. 2006).

> words, applying the Baker test is how to prove the "parental domination" standard set forth in Brown. In other words, applying the Baker test is how to prove the "parental domination" standard set forth in Brown. Furthermore, assuming the presumption articulated in Brown informs the analysis set forth in Baker, it is overcome in this case by evidence of [the parent company's] and [the subsidiary company's] 1) interrelation of operations, 2) common management, 3) centralized control of labor relations, and 4) common ownership or financial control.

Sandoval v. American Building Maintenance Industries, Inc., supra at 796.

Accordingly, we apply Baker's four-factor test, as have the District Courts in this Circuit, which have addressed the issue after Sandoval. See, e.g., Martin v. Reliastar Life Ins. Co., --- F. Supp.2d ---, 2010 WL 1840877 at *6 (D. Minn., May 10, 2010); Sowers v. Gatehouse Media Missouri Holdings, Inc., 2010 WL 1633389 at *12 (E.D. Mo., April 22, 2010).

In reverse order, the Record is undisputed that Hubbard and WDIO have a common ownership, as WDIO is a wholly-owned subsidiary of Hubbard but, as the Court intimated in Baker, "no one of the enumerated factors is controlling." Baker v. Stuart Broadcasting Co., supra at 392, citing National Labor Relations Board v. Welcome-American Fertilizer Co., 443 F.2d 19 (9th Cir. 1971); see also, Scheidecker v. Arvig Enterprises, Inc., 122 F. Supp.2d 1031, 1038 (D. Minn. 2000), citing Baker v. Stuart Broadcasting Co., supra at 392. Indeed, if this factor were controlling, then

the mere showing that the subsidiary was wholly-owned by the corporate parent would dispense with the remaining analysis, and would singularly rebut the "strong presumption that a parent company is not the employer of its subsidiary's employees," Brown v. Fred's, Inc., supra at 739, which plainly is not the case.

As to the element of "centralized control of labor relations," Jones' attestation, that "WDIO-TV is solely responsible for hiring, firing and disciplining its employees," Jones Decl., Docket No. 11, at p. 1 ¶4, has gone unrebutted. "Some courts consider this factor to be the most significant in the inquiry." Scheidecker v. Arvig Enterprises, Inc., supra at 1038-39, citing Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983); Schubert v. Bethesda Health Group, Inc., 319 F. Supp.2d 963, 966 (E.D. Mo. 2004), citing Schweitzer v. Advanced Telemarketing Corp., 104 F.3d 761, 764 (5th Cir. 1997), see also, Torres-Negron v. Merch & Co., Inc., 488 F.3d 34, 42 (1st Cir. 2007).

The Record is bereft of any showing that Hubbard and WDIO have a "common management."  In fact, with the exception of Cook, who is identified as Hubbard's Human Resources Vice President, each of the Plaintiff's supervisors, who are mentioned in her Amended Complaint, appear to be employees of WDIO:  Couture [General Manager of WDIO]; Goodspeed [WDIO's News Director]; Scandin

[WDIO's Human Resources contact]; Whaley [the Plaintiff's immediate supervisor at WDIO]; and Massee [WDIO's Assistant News Director]. There is nothing in the Plaintiff's Amended Complaint to suggest, let alone demonstrate, that those WDIO employees held sinecures, and received pay for doing nothing. As for Cook, the Amended Complaint alleges that the Plaintiff telephoned, or emailed her, on two (2) occasions, and there is no indication that, at any point, Cook originated a contact with the Plaintiff. We find no showing of Cook's involvement in the Plaintiff's hiring, firing, or disciplining, by WDIO. Rather, the Plaintiff has identified Massee, Goodspeed, and Whaley, as having conducted her "second and final performance review."

It is true that, when the Plaintiff telephoned Cook on June 5, 2008, Cook simply stated that the Plaintiff sounded "miserable," and offered her "paid time off until the 18th after which [the Plaintiff] would be no longer employed from WDIO." Amended Complaint, Docket No. 4, at p. 5 of 7. The Plaintiff does not allege, however, that, when she spoke with Massee and Whaley on June 6, and when Whaley "said the terms were pay as if I worked until the 18th, regular medical coverage until the end of June and COBRA after that," id. at p. 6 of 7, he was extending Hubbard's terms for her termination. Nor do we overlook the Plaintiff's allegation, that Cook telephonically

attended the Plaintiff's Unemployment Compensation Hearing, along with Massee, Whaley, and Goodspeed. Id. The Plaintiff does not disclose, however, who she named as her employer for unemployment compensation purposes, and therefore, we cannot exclude the real possibility that the Plaintiff named Hubbard as her employer, as she did in her EEOC Charge of Discrimination, see, Roby Decl., Exhibit A, Docket No. 32-1, and in her Amended Complaint. See, Amended Complaint, Docket No. 4. As a result, Cook's appearance at that Hearing, without more, shows little difference from when she responded, in the past, to the Plaintiff's telephone calls, or email contacts.

As to the "interrelation of operations," Hubbard has disclosed that WDIO "pays a relatively small administrative fee to Hubbard" -- whatever that means -- for some support services, such as legal and human resources," but "WDIO-TV is solely responsible for hiring, firing and disciplining its employees, and for local programming, newsgathering, and ad placement." Jones Decl., Docket No. 11, at pp. 1-2. Those attestations would be consistent with the Plaintiff's telephone calls to Cook, and to her consultation with Hubbard's corporate sexual harassment policy. Although we are given some pause by the Plaintiff's assertion, that she contacted Hubbard to review her personnel file, she has not alleged whether that was a duplicate

file, or the original, and that allegation is somewhat inconsistent with Jones' averment that WDIO controls its own employment decisions.

Jones has also averred, without contradiction from the Plaintiff, that WDIO "is a separate legal entity and operates as a separate business," "enters into its own contracts and agreements such as its network affiliate agreement with ABC," "holds FCC licenses in its own name which authorizes WDIO-TV and WIRT-TV to broadcast their television signals," "is solely responsible for remitting all payroll taxes and has a separate tax identification number," and "[i]ts unemployment insurance payments are based upon its rating as a separate company and not based upon Hubbard Broadcasting Inc.'s experience rating." Id. Those unrebutted averments are entirely at odds with any close interrelationship between Hubbard and WDIO. Those averments are further supported by the Plaintiff's Employment Agreement with WDIO, which makes no mention, however tangentially, of Hubbard. See, Barnum Decl., Docket No. 10, at p. 3.

We are mindful that Hubbard's Affidavits say nothing about the commonality of the management officers, between Hubbard and WDIO, and do not attest to many of the Baker/Sandoval factors. Similarly, while generally attesting to WDIO's solitary control of hiring, firing, and disciplining decisions, there is no specific attestation that

any particular manager at WDIO was responsible for the Plaintiff's termination of employment, nor any specific averment as to where the Plaintiff's personnel file was maintained and stored. We are unable to tell whether Hubbard's Affidavits were intentionally designed to circumvent the four (4) factor test of Baker/Sandoval, or were the result of Hubbard's apparent reliance upon the two (2) factor test of Brown, which Hubbard mistakenly attributes to Sandoval. See, Hubbard's Memorandum of Law, Docket No. 9, at p. 11 (citing Sandoval for the proposition that, "[t]o overcome this strong presumption, a plaintiff must show (1) that the parent dominated the subsidiary's operations (interrelation of operations, common management, centralized control of labor relations, common ownership, financial control); or (2) that the parent was directly involved in the alleged unlawful action."). Of course, we cannot fault Hubbard for synthesizing the Baker/Sandoval factors into the two-factor test of Brown, for that is how we have harmonized those decisions, but our task would have been less difficult if Hubbard had focused upon the four (4) factors of Baker/Sandoval.

In the final analysis, having failed to file any opposition to Hubbard's Motion for Summary Judgment, having failed to file any Affidavits to bolster, or corroborate, the allegations of her Amended Complaint, and having failed to make an appearance,

by telephone, at the Hearing on Hubbard's Motion, the Plaintiff has effectively abandoned her claims against Hubbard. While that abandonment does not obviate our need to assess the merits of Hubbard's Motion, it has deprived the Court of a full Record upon which to consider the substance of the Summary Judgment Hubbard seeks. As a party appearing pro se, we are obligated to "construe civil-rights and discrimination claims charitably," a practice that "stems from the rather fundamental policy that mere vagueness in a pro se claim should not sound the death knell for the plaintiff's discrimination allegation." Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996), quoting Pickney v. American Dist. Telegraph Co. of Ark., 568 F. Supp. 687, 690 (E.D. Ark. 1983). "But there is a difference between liberally reading a claim which 'lacks specificity * * *, and inventing, ex nihilo, a claim which simply was not made." Id.; see also, Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000).

As the Court explained; in Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004), "[w]hen we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework;" "[t]hat is

quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." See also, <u>Davis v. Hall</u>, 992 F.2d 151, 152 (8th Cir. 1993) ("Civil rights pleadings are construed liberally [, but] they must not be conclusory and must set forth facts which state a claim as a matter of law."); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985)("Although it is to be construed liberally, a pro se complaint must contain specific facts supporting its conclusions."). Here, we are unable to assume facts that were not pled in the Plaintiff's Amended Complaint, or exalt mere allegations over attested showings, simply to permit her action against Hubbard to survive Summary Judgment.

We do not overlook that this case remains in its infancy, and that the issue raised by Hubbard, in support of its Motion for Summary Judgment, is fact-driven. We are unable to conclude, however, that the Motion is premature at this point. As the Court explained, in <u>Stanback v . Best Diversified Prods., Inc.</u>, 180 F.3d 903, 910-11 (8th Cir. 1999):

> In analyzing whether a claim is ripe for summary judgment, a district court has discretion to determine whether the parties have had adequate time for discovery, and that determination is reviewed for abuse of discretion. See National Bank of Commerce v. Dow Chem. Co., 165 F.3d

602, 606 (8th Cir. 1994)(finding no abuse of discretion where district court denied further discovery and ruled on summary judgment after more than a year of discovery had been completed). Although discovery does not have to be completed before a court can grant summary judgment, summary judgment is proper only after the nonmovant has had adequate time to engage in discovery. See In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1488-90 (8th Cir. 1997).

Here, discovery is incomplete and, in fact, has not commenced insofar as we are aware, but the Plaintiff does not oppose Hubbard's Motion for Summary Judgment on any ground, much less on the ground that discovery should be allowed to be completed before the Motion would be proper.

As the Court further explained, in Stanback:

A party opposing summary judgment who believes that she has not had an adequate opportunity to conduct discovery must seek relief pursuant to Federal Rule of Civil Procedure 56(f), which requires the filing of an affidavit with the trial court showing "what specific facts further discovery might unveil." Dulany v. Carnahan, 132 F.3d 1234, 1238 (8th Cir.1997). Where a party fails to carry her burden under Rule 56(f), "postponement of a ruling on a motion for summary judgment is unjustified." Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1983).

Id. at 911.

"The purpose of subdivision (f) is to provide an adequate safeguard against an improvident or premature grant of summary judgment * * * and [the rule] should be applied with a spirit of liberality."  United States ex rel. Bernard v. Casino Magic Corp., 293 F.3d 419, 426 (8th Cir. 2002)[internal quotations omitted].  Here, the Plaintiff filed no Rule 56(f) Affidavit which, in and of itself, would not preclude the Court from deferring a Motion for Summary Judgment as premature, but would plainly have demonstrated her interest in pursuing a claim against Hubbard.

In Gerhardson v. Gopher News Co., 2009 WL 294291 at *5 (D. Minn., February 5, 2009), the Court ruled as follows:

> Although plaintiffs did not file an affidavit in accordance with Federal Rule of Civil Procedure 56(f), this failure is not fatal to plaintiffs' opposition to the Motion.  Plaintiffs have identified in their briefs the discovery that they seek, why that information is relevant to Central States' motion for summary judgment, and why they have been limited in their opportunity to obtain discovery. See, e.g., Mogyrossy v. Comfort Inn, 173 F.R.D. 134, 137-38 (E.D. Pa. 1997) ("[E]ven though the plaintiffs have not filed an affidavit, they have identified information that has yet to be discovered, show that this information will affect summary judgment, and shown why the discovery has not previously been obtained.").

The Plaintiff, however, has filed no opposition to Hubbard's Motion, although she filed an Objection to WDIO's Motion to Stay this proceeding in favor of arbitration.

In that Objection, the Plaintiff did request a continuance of the Hearing on the Defendants' Motions, but that continuance was predicated upon the hardship that would be caused if she were compelled to personally appear in Minnesota, and her desire to retain legal counsel, "as [she is] not an attorney and [needs] assistance to fully understand the motions that have been filed by my former employer's attorneys." Plaintiff's Objection to Motion to Compel Arbitration and Request for Continuance, Docket No. 27, at pp. 4-5. She has not suggested, nor averred, that discovery is necessary before the Court can properly rule on Summary Judgment.

As a consequence, given the Record before us, and without any request for discovery, notwithstanding the many months that have transpired since Hubbard's Motion for Summary Judgment was filed on January 28, 2010, see, Docket No. 7, we conclude that Hubbard was neither the actual nor the imputed employer of the Plaintiff, and therefore, her claims against Hubbard, under Title VII, the EPA, and the ADEA, necessarily fail as each requires the Plaintiff to sue her employer, which Hubbard is not. See, Sowers v. Gatehouse Media Missouri Holdings, Inc., supra at *12 ("Only an 'employer' may be liable under the ADEA * * *."); Brown v. Fred's, Inc., supra at 739 ("Title VII and the EPA apply to an 'employer.'"). Accordingly, we recommend that Hubbard's Motion for Summary Judgment be granted, and that the

Plaintiff's claims against Hubbard, under Title VII, the EPA, and the ADEA, be dismissed with prejudice.

        3.    <u>The Defendants' Motion to Dismiss the Plaintiff's OSHA Claim</u>. The Defendants contend that the Plaintiff's OSHA claim must fail, because that Act does not provide a private cause of action. See, <u>Hubbard's Memorandum of Law, Docket No. 9</u>, at pp. 13-15; <u>WDIO's Memorandum of Law, Docket No. 16</u>, at pp. 8-9. The Plaintiff's OSHA claim appears to relate to the alleged requirement that she use the Link, which is a vehicle that, allegedly, was unsafe, in her photographing duties at WDIO. The Defendants have cited to a number of cases that support their argument that OSHA does not afford private citizens a right of action. See, <u>Solis v. Summit Contractors, Inc.</u>, 558 F.3d 815, 829 (8th Cir. 2009)[collecting cases]; <u>Glanton v. Harrah's Entertainment, Inc.</u>, 297 Fed.Appx. 685, 687 (9th Cir. 2008) [unpublished]; <u>Siravo v. Crown, Cork & Seal Co.</u>, 256 Fed.Appx. 577, 580 (3rd 2007) [unpublished]; <u>American Federation of Gov't Employees v. Rumsfeld</u>, 321 F.3d 139, 143-44 (D.C. Cir. 2003); see also, <u>Stevenson v. Best Buy Corp.</u>, 2005 WL 3434770 at *4 (E.D. Mo., December 14, 2005), citing <u>Taylor v. Brighton Corp.</u>, 616 F.2d 256, 262-63 (6th Cir. 1980).

The Plaintiff has filed no opposition to the Defendants' Motion to Dismiss her OSHA claim, and therefore, finding that OSHA does not afford her a private cause of action against the Defendants, we recommend that their Motion to Dismiss that claim be granted, and that the OSHA claim be dismissed with prejudice.

    4.    <u>WDIO's Motion to Stay Litigation, and Compel Arbitration</u>. Where a party has filed a Motion to Dismiss or Stay Litigation, and Compel Arbitration, we first look to whether the agreement to arbitrate is valid and enforceable. See, <u>Bakas v. Ameriprise Fin. Servs.</u>, 651 F. Supp.2d 997, 1000 (D. Minn. 2009); <u>Johnson v. Hubbard Broadcasting, Inc.</u>, 940 F. Supp. 1447, 1454 (D. Minn. 1996). Here, WDIO contends that the Agreement is valid and enforceable, while the Plaintiff argues that she signed the employment contract, which contains the arbitration clause, under economic duress, because she would not receive her raise until she signed it, and she felt pressured by the presence of her supervisor to sign the contract without reading it.

Under Minnesota law, a contract is formed where there is an offer, an acceptance thereof, and consideration. See, generally, <u>Edwards v. Hennepin County</u>, 397 N.W.2d 584 (Minn.App. 1986). Here, the Plaintiff essentially argues that there was no valid "acceptance," and that her signature on the employment contract does

not manifest consent, because she felt pressured to sign that Agreement without reading its contents, and was in a disadvantageous economic position in comparison to WDIO.

As to the Plaintiff's argument, that the arbitration clause and the Agreement are invalid because she did not read them, Minnesota law is clear that, absent fraud or misrepresentation, the failure to read a contract is no defense to its enforcement. See, Gartner v. Eikill, 319 N.W.2d 397, 398 (Minn. 1982); District 318 Service Employees Ass'n v. Independent Sch. Dist. No. 318, 2004 WL 292067 at *4 (Minn.App., February 17, 2004); Winthrop Resources Corp. v. Sabert Corp., 567 F. Supp.2d 1084, 1094 (D. Minn. 2008); see also, 14 Penn Plaza LLC v. Pyett, --- U.S. ----, 129 S.Ct. 1456, 1465 (2009)("[T]he agreement to arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed in the ADEA" for purposes of requiring that employees may only waive substantive rights under the ADEA personally, knowingly, and voluntarily.).  Although the Plaintiff argues that her supervisor "apparently knew there was something objectionable in [the contract] as he stood in close proximity and urged [the Plaintiff] not to read it before [she] signed it," Plaintiff's Objection, Docket No. 27, at p. 4 of 5, the Plaintiff has not alleged, nor has she competently demonstrated, that WDIO misrepresented the contents of the contract,

and therefore, she has not shown that her signature, which documents her acceptance of the terms being offered, was invalid for any reason that she has urged.

Further, WDIO correctly notes that economic duress, as created by the unequal bargaining positions of employers and employees, is not a sufficient defense to the enforcement of a contract without some showing that physical force, or illegal threats, were employed in obtaining her signature. See, <u>Johnson v. Hubbard Broadcasting, Inc.</u>, supra at 1456, quoting <u>Bond v. Charlson</u>, 374 N.W.2d 423, 428 (Minn. 1985); see also, <u>Sletten v. Turnquist, Inc.</u>, 1995 WL 619817 at *3 (Minn.App., October 24, 1995)("Economic stress or the superior bargaining power of one party, however, does not make consent ineffective."). The Plaintiff has not alleged anything beyond an "urging," and therefore, she has not sufficiently alleged that the employment contract is invalid based on duress. See, <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 627 (1985)("Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract.")[internal quotations omitted].

The second step of the analysis is to determine whether the Plaintiff's claims fall within the scope of the operative arbitration agreement. See, <u>Johnson v. Hubbard</u>

Broadcasting, Inc., supra at 1456-57.  The Plaintiff contends that some of her claims fall outside of the agreement, but it is not clear which ones she means.  As we have noted, the Plaintiff's Amended Complaint references Title VII, the ADEA, the EPA, and OSHA, as the bases of her claims.  Pretermitting the Plaintiff's OSHA claim, which is not legally cognizable, both Title VII and the ADEA are specifically mentioned in the Arbitration Agreement as claims which should be brought in arbitration.  Accordingly, by the express language of the agreement, the Title VII and ADEA claims fall within its scope.

The EPA is not specifically mentioned in the agreement, and WDIO does not address the claim individually in its Memorandum.  Rather, WDIO appears to rest on its discussion of the presumption in favor of arbitration when the arbitration clause is general in its scope.  In any event, the Agreement is very broadly drafted, and states that "all claims and disputes" are to be decided by arbitration, including those "arising out of federal, state, or local statutes or ordinances."  Since the Plaintiff's EPA claim is based upon a Federal Statute, and is a claim by the Plaintiff against her employer, it falls within the scope of that Agreement.  See, Gassner v. Jay Wolfe Toyota, 2007 WL 1452240 at *3 (E.D. Mo., May 15, 2007); Richert v. National Arbitration Forum, LLC, 2009 WL 3297565 at *4 (D. Minn., October 13, 2009)(finding that an ADEA

claim fell within the scope of an arbitration agreement which stated that any dispute must be resolved in arbitration, even though the agreement did not specify that ADEA claims must be arbitrated), citing Hull v. NCR Corp., 826 F. Supp. 303, 305 (E.D. Mo. 1993).

Third, we must determine whether the claims are arbitrable. See, Johnson v. Hubbard Broadcasting, Inc., supra at 1457. This determination requires us to ascertain whether Congress intended to preclude any waiver of a judicial resolution, either from the language of the statute, the legislative history, or "'an inherent conflict between arbitration and the statute's underlying purpose.'" Steele v. L.F. Rothschild & Co., Inc., 701 F. Supp. 407, 408 (S.D.N.Y. 1988), quoting Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27 (1987); see also, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991).

The bulk of the Plaintiff's Response to the Motion to Stay or Dismiss, and Compel Arbitration, concerns the asserted unfairness of requiring the case to proceed in arbitration, as opposed to permitting the Plaintiff to vindicate her grievances in Federal Court. Specifically, the Plaintiff contends that she will be at an unfair economic disadvantage in arbitration, that she did not intend to give up her substantive

Federal statutory rights, and that the EEOC has a negative view of arbitration as a means to resolve civil rights disputes that are related to employment.

First, the Supreme Court has long held that a party agreeing to have a claim decided in arbitration does not forfeit any statutory rights, but simply agrees to have those rights determined in a different forum. See, Gilmer v. Interstate/Johnson Lane Corp., supra at 26 ("'[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum.'"), quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., supra at 628. Accordingly, the Plaintiff's argument, that proceeding in arbitration will constitute a waiver of her substantive statutory rights, is unavailing.

Although the Plaintiff argues that the neutrality of the National Arbitration Forum has been called into question by the Minnesota Attorney General, and an unnamed report produced in 2007, the Supreme Court has previously "decline[d] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." Gilmer v. Interstate/Johnson Lane Corp., supra at 30. The arbitration agreement, here, states that the rules of the American Arbitration Association will

apply to the arbitration proceedings, and those rules have been held by other Courts to be sufficient to protect the parties' substantive rights. See, <u>Cole v. Burns Intern. Sec. Services</u>, 105 F.3d 1465, 1481-83 (D.C. Cir. 1997); <u>Williams v. Katten, Muchin & Zavis</u>, 837 F. Supp. 1430, 1439-40 (N.D. Ill. 1993)(finding the AAA rules on discovery and the appointment of arbitrators adequate). Indeed, the Rules provide for some discovery, for written Orders, and for the disqualification of arbitrators based upon bias -- the same considerations that the Court discussed in <u>Gilmer</u>. See, <u>Rules 9, 16 and 39, AAA Employment Arbitration Rules and Mediation Procedures, effective November 1, 2009</u>;[10] <u>Gilmer Interstate/Johnson Lane Corp.</u>, supra at 31-33.

Moreover, recognizing that the 180-day limitation that is imposed by the arbitration agreement is extremely narrow, and contrary to the statutes of limitations for actions in a Court of law, WDIO represents that it will waive any defense based upon the 180-day limitation, and instead, requests that a 60 day deadline be imposed, from the date of the issuance of the Order compelling arbitration. See, <u>WDIO's Memorandum of Law, Docket No. 16</u>, supra at p. 15. In addition, WDIO also agrees to waive that portion of the arbitration agreement which limits the recovery, so that

---

[10]Last accessed at <u>http://www.adr.org/sp.asp?id=32904</u> , printed, and included in the work file on August 9, 2010.

the Plaintiff may recover, in arbitration, "whatever remedies and fees would have been available had the case remained before this Court." Id. at p. 16. As a consequence, there does not appear to be a reason to find that the arbitration procedures would be unfair to the Plaintiff.

In addition, there is a large body of case law which has held that Title VII claims, and ADEA claims, are arbitrable or, in other words, that Congress did not intend to preclude the arbitration of such claims. See, Gilmer v. Interstate/Johnson Lane Corp., supra (ADEA); 14 Penn Plaza LLC v. Pyett, supra at 1465 ("This Court has squarely held that the ADEA does not preclude arbitration of claims brought under the statute."); Rosenberg v. Merrill Lynch, Fenner & Smith, Inc., 170 F.3d 1, 10 (1st Cir. 1999)(Title VII)[collecting cases]; Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 837 (8th Cir. 1997)("[W]e agree with those post-Gilmer decisions which have ruled that Title VII claims, like ADEA claims, are subject to individual consensual agreements to arbitrate.")[collecting cases].

While the issue appears to have come up less frequently, several Courts have also held that claims under the Fair Labor Standards Act, and specifically, the EPA, are also arbitrable. See, Steele v. L.F. Rothschild & Co., Inc., supra at 408 (claim pursuant to EPA under the Fair Labor Standards Act is arbitrable); Carter v.

Countrywide Credit Industries, Inc., 362 F.3d 294, 297-98 (5th Cir. 2004)(FLSA claims were arbitrable under individual employment agreements; where the employer agreed to pay all costs associated with arbitration); Kruse v. AFLAC International, Inc., 458 F. Supp.2d 375, 388 (E.D. Ky. 2006)("There is no indication that Congress intended claims under the Equal Pay Act to be exempt from arbitration under the FAA.").

Having determined that there is a valid, binding, and enforceable, agreement to arbitrate the claims presented in this lawsuit, and that those claims are arbitrable, the Plaintiff's claims against WDIO must be arbitrated, pursuant to the Agreement, and it is mandatory that we stay those claims in Federal Court until the arbitration is completed. See, Title 9 U.S.C. §3; Volkswagen of America, Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 971 (7th Cir. 2007)("For arbitrable issues, a [Title 9 U.S.C.] §3 stay is mandatory."). As a consequence, we recommend that the Plaintiff be compelled to arbitrate her Title VII, EPA, and ADEA claims against WDIO, and that this case be stayed until the arbitration proceeding is at an end.

NOW, THEREFORE, It is --

RECOMMENDED:

1.	That the Motions of the Defendants to Dismiss the Plaintiff's Amended Complaint for Insufficiency of Service of Process [Docket Nos. 7 and 14] be denied, and that the Plaintiff be afforded a period of thirty (30) days, after this Report and Recommendation becomes final, to serve the Defendants with a Summons, and her Amended Complaint, through the services of the United States Marshal.

2.	That the Motion of the Defendant Hubbard Broadcasting, Inc., for Summary Judgment [Docket No. 7] be granted, and that the Plaintiff's claims against that Defendant be dismissed with prejudice.

3.	That the Motions of the Defendants for the dismissal, with prejudice, of the Plaintiff's claims under the Occupational Safety and Health Act, Title 29 U.S.C. §§651, et seq. [Docket Nos. 7 and 14], be granted.

4.	That the Motion of the Defendant WDIO-TV to Stay Litigation, and Compel Arbitration [Docket No. 14] be granted.


Dated:  August 9, 2010	*s/Raymond L. Erickson*
	Raymond L. Erickson
	CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 23, 2010,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 23, 2010,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.